# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **REDHAWK MEDICAL PRODUCTS & SERVICES, LLC** | **CIVIL DOCKET NO. 6:23-CV-01021** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **N95 SHIELD, LLC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is a MOTION TO VACATE ARBITRATION AWARD (the "Motion") filed by Defendant N95 Shield, LLC (hereinafter "N95 Shield"). [Doc. 25]. N95 Shield seeks an order vacating the arbitration award of May 1, 2023 (the "Final Award") under 9 U.S.C. § 10(a)(4) and asks this Court to deny Redhawk Medical Products & Services, LLC's ("Redhawk") "Petition to Confirm Arbitration Award" [Doc. 1] on the same grounds. For the following reasons, N95's Motion is DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises from N95 Shield's purchase of 500 million PPE products (3M Masks) from Redhawk for a total purchase price of $950,000,000 pursuant to a Sales and Purchase Agreement (the "Agreement") executed on June 22, 2021, by Matt Miller, CEO of N95 Shield, and Darcy Klug, CEO of Redhawk. The Agreement describes the product purchased [Doc. 30-1, ¶ 1]; the purchase price [Doc. 30-1, ¶ 2]; the procedures for the transfer of funds and release of the product [Doc. 30-1, ¶ 3]; the occurrences giving rise to a default under the Agreement [Doc. 30-1, ¶ 10]; and

the remedies available to both parties in the event of a failure to cure a default [Doc. 30-1, ¶ 11].

Important here, the following provisions of the Agreement are relevant and pertinent to the dispute between the parties:

**SALES AND PURCHASE AGREEMENT**

…

This Sales and Purchase Agreement ("SPA") is made as of this 22nd day of June, 2021 by and among **N95 SHIELD, LLC,** an Arizona limited liability company with a principal address at 1635 E. Orange Wood Street, Gilbert, AZ 85296 ("Purchaser") and **RedHawk Medical Products & Services, LLC,** a Louisiana limited liability company, with a principal address at 100 Petroleum Dr., Suite 200, Lafayette, LA 70508 ("Seller"). This Agreement may also refer to Seller and Purchaser collectively as, "Parties" and individually, as "Party." [*See* Sales and Purchase Agreement, attached as Exhibit 1 to Redhawk's opposition brief, Doc. 30-1].

…

**15. Notices.** All notices required or permitted hereunder shall be in writing and shall be deemed properly served if delivered in person or by reputable overnight courier service, or if sent by confirmed email, registered or certified mail, with postage prepaid and return receipt requested, to the addresses in the Agreement or to such addresses as a party may designate from time to time pursuant to this Section 15. All notices shall be deemed received on the date of delivery or attempted delivery, if emailed, or if delivered in person, or if mailed, on the date which is two (2) days after the date such notice is deposited in the United State Postal Service mail.

**IF TO SELLER:**

RedHawk Medical Products & Services, LLC
Darcy Klug, CEO
100 Petroleum Dr., Suite 200
Lafayette, LA 70508
Office: 337-269-5933
Email: Darcy.klug@redhawkholdingscorp.com
www.redhawkmedicalproducts.com

**WITH A SELLER COPY TO:**

Samuel E. Masur, Esq.
Gordon Arata Montgomery Barnett
400 East Kaliste Saloom Road,
Suite 4200, Lafayette, LA 70508
Office: 337-237-0132
Email: smasur@gamb.com

**IF TO PURCHASER:**

N95 Shield, LLC
Matt Miller
14325 N. 79 Street, Suite C
Scottsdale, AZ 85260
Office: 480-329-4374
Email: matt@n95-shield.com
www.n95-shield.com

[Doc. 30-1, ¶ 15].

…

**25.** **Arbitration of Disputes.** If a claim or controversy arising out of or relating to this Agreement, the performance or non-performance of obligations, the quality or appropriateness of the Products, such dispute shall be determined by final and binding arbitration.… The arbitration will be conducted at a location determined by the Arbitrator in Louisiana.… In rendering the award, the arbitrator shall determine the rights and obligations of the Parties according to the substantive and procedural laws of Louisiana. Neither Party, however, will be precluded from obtaining provisional relief, including but not limited to attachment, in any court of competent jurisdiction. Judgment may be entered upon the arbitrator's award by any court having jurisdiction. Should either Party refuse or neglect to appear or participate in the arbitration proceeding, the arbitrator is empowered to decide the claim or controversy in accordance with the evidence presented. [Doc. 30-1, ¶ 25].

Redhawk argues that the Agreement was breached on June 23, 2021, when N95 Shield failed to transfer $9,500,000 into a designated escrow account as required

under Section 3.2 of the Agreement.[1] Redhawk further contends that N95 Shield's default and failure to cure its default within ten (10) business days of notice gave rise to Redhawk's contractual right to seek remedy in arbitration for breach of contract.

On May 20, 2022, Redhawk filed a Request for Arbitration with Judicial Arbitration and Mediation Service ("JAMS"). [*See* Final Award, Doc. 30-30, p. 4]. On June 7, 2022, Redhawk served the Request for Arbitration on N95 Shield by mailing a copy of the Request to N95 Shield at 1635 Orange Wood St., Gilbert, Arizona, 85296 (the "Gilbert Address"). [*Id.* at 4-5; *see also* Doc. 30-8]. An arbitration hearing was conducted by retired judge Michael Massengale on February 22, 2023, [Doc. 30-30, p. 8], and an Interim Award and Order was issued on March 9, 2023. [Doc. 30-26]. No appearance was made by or on behalf of N95 Shield during the entirety of the arbitration proceedings. A Final Award, issued on May 1, 2023, awarded the following amounts to Redhawk: (i) damages for breach of contract in the amount of $44,950,000; (ii) attorneys' fees and costs in the amount of $68,614.31; (iii) pre-award interest in contract damages in the amount of $3,365,092.47; and (iv) post-award interest on the sum awarded for contract damages, attorneys' fees and costs in a total amount to be determined at the time of payment or the entry of an order confirming

---

[1] Section 3.2 provides:

> **3.2** Within one (1) business day following execution and exchange of this Agreement, [N95 Shield] shall transfer … $9,500,000.00 into the Mosely & Lester Escrow Account pursuant to the Mosely and Lester Escrow Account Agreement, a copy of which is attached [to the Agreement].

[Doc. 30-1, ¶ 3].

the award. The Final Award was mailed to N95 Shield on May 1, 2023, at the Gilbert Address. [Doc. 30-29].

On August 2, 2023, Redhawk filed the instant lawsuit, petitioning the Court for confirmation of the Final Award and entry of judgment against N95 Shield in conformity therewith. [Doc. 1]. N95 Shield filed the instant Motion on November 17, 2023, seeking to vacate the Final Award on grounds N95 Shield had no notice of the arbitration proceedings and the arbitration was therefore improper. [Doc. 25]. Redhawk filed an Opposition [Doc. 30] on December 7, 2023 [Doc. 30], to which N95 Shield filed a Reply [Doc. 31] on December 12, 2023. Oral argument on the Motion was conducted on January 17, 2024. [*See* Minutes, Doc. 36]. The Motion is now ripe for ruling.

## LAW AND ANALYSIS

### I. The Federal Arbitration Act

Congress enacted the Federal Arbitration Act ("FAA") "to replace judicial indisposition to arbitration with a national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts." *21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 335 (5th Cir. 2014), *citing Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L.Ed.2d 254 (2008) (alterations in original, citations and internal quotation marks omitted). In line with that policy, the FAA supplies "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *21st Fin. Servs.*, 747 F.3d at 335. The FAA provides the exclusive remedy for challenging misconduct in the administration of an arbitration award. *Id.*

at 335, *citing Ameser v. Nordstrom, Inc.*, 442 F. App'x 967, 970 (5th Cir. 2011). Under the FAA, a court's review of an arbitration award is "extraordinarily narrow." *Collins v. Nat'l Football League*, 566 F. Supp. 3d 586, 595 (E.D. Tex. 2021), *citing Int'l Chem. Workers Union 683c v. Columbian Chems. Co.*, 331 F.3d 491, 495 (5th Cir. 2003).

A motion to vacate an arbitration award is governed by 9 U.S.C. § 10, which provides:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). *See also Ameser v. Nordstrom, Inc.*, 442 F. App'x at 970. A Court must confirm an arbitration award unless it should be vacated under Section 10 or modified under Section 11 of the FAA. *MPJ v. Aero Sky, L.L.C.*, 673 F. Supp. 2d 475, 480 (W.D. Tex. Nov. 30, 2009).

**II.     Analysis**

As an initial matter, the Court notes that there is no pending motion to *confirm* the final arbitration award. Although Redhawk filed the lawsuit as a summary proceeding seeking enforcement of the arbitrator's Final Award, the only motion before the Court at this time is N95 Shield's motion to vacate the award under 9 U.S.C. § 10(a)(4). In its Motion, N95 Shield has not asked the Court to review the merits of the underlying arbitration proceeding – e.g., the sufficiency of the evidence presented or the correctness of the findings – but rather, asks the Court to vacate the Final Award on grounds N95 Shield was not properly served with notice of the arbitration proceeding. Although Redhawk asks the Court in its opposition brief to enforce the Final Award and enter judgment in its favor therewith, that request has not been presented to the Court in the proper procedural posture. Considering the foregoing, the only question before the Court at this time is whether N95 Shield is entitled to have the Final Award vacated under 9 U.S.C. § 10(a)(4).

In its Motion, N95 Shield argues that vacating the Final Award is appropriate under 9 U.S.C. § 10(a)(4) because N95 Shield did not have proper notice of the arbitration proceedings and was therefore denied due process. Specifically, N95 Shield argues that the "Notices" section of the Agreement required that any notice "required or permitted" under the Agreement be mailed to N95 Shield via U.S. mail at the following address: 14325 N. 79th Street, Suite C, Scottsdale, Arizona 85260 (hereinafter, the "Scottsdale address"). N95 Shield argues that when Redhawk filed its Request for Arbitration on May 20, 2022, notice was not sent to the Scottsdale Address as required by the Agreement, but rather, was sent to the Gilbert Address.

According to N95 Shield, the first time *any* documentation related to the arbitration proceedings was sent to the Scottsdale Address was in January 2023.² But N95 Shield argues that it did not receive this notice, because on June 10, 2022, N95 Shield filed Articles of Termination with the Arizona Corporation Commission. [*See* N95 Shield, LLC Articles of Termination, Doc. 25-2].

Because the crux of the parties' dispute focuses on the interpretation of Section 15 of the Agreement, reference to the Louisiana Civil Code's instructions regarding the proper method of contract interpretation is appropriate. *Arcadis U.S., Inc. v. Stryker Demolition & Env't Servs., LLC*, 2023 WL 4394156, at *3–4 (W.D. La. July 6, 2023), *citing Landis Const. Co. v. St. Bernard Par.*, 151 So. 3d 959, 962–63 (La. App. 4th Cir. 10/22/14), *writ denied*, 159 So. 3d 467 (La. 2/13/15). "A contract constitutes the law between the parties." *Id.*, *citing* La. Civil Code art. 1983. The interpretation of a contract is the determination of the common intent of the parties. *Id.*, *citing* La. Civil Code art. 2045. "If the words of a contract are clear, unambiguous, and lead to

---

² The record shows that on January 16, 2023, Redhawk mailed a "Second Amended Claim" in Arbitration #5335000056 to N95 Shield at the Scottsdale Address. This document contains the following language:

> On or about June 7, 2022 RedHawk served notice of these arbitration proceedings to N95 via Federal Express ... N95 has refused or neglected to respond in any manner whatsoever to either JAMS or counsel for RedHawk.
>
> A copy of the Amended Claim was sent to N95 via Federal Express … on July 8, 2022. A copy of this Second Amended Complaint was served upon N95 via Federal Express … on January 13, 2023.
>
> RedHawk requests that the arbitration proceedings be commenced immediately as it is apparent that N95 is refusing or otherwise failing to participate in these proceedings.

[Doc. 30-12].

no absurd consequences, the court need not look beyond the contract language to determine the parties' true intent." *Id.*, *citing* La. Civil Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.*, *citing* La. Civil Code art. 2050. "When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide." *Id.* "Meaning and intent of parties to a written instrument is ordinarily determined from the instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms." *Id.*

"[T]he determination of whether a contract is clear or is ambiguous is also a question of law." *Id.* "A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue, the terms of the written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Id.*

Section 15 of the Agreement provides:

> **15. <u>Notices</u>.** All notices required or permitted hereunder shall be in writing and shall be deemed properly served if delivered in person or by reputable overnight courier service, or if sent by confirmed email, registered or certified mail, with postage prepaid and return receipt requested, **to the addresses in the Agreement or to such addresses as a party may designate from time to time pursuant to this Section 15**. All notices shall be deemed received on the date of delivery or attempted delivery, if emailed, or if delivered in person, or if mailed, on the date which is two (2) days after the date such notice is deposited in the United State Postal Service mail.
>
> …

**IF TO PURCHASER:**

N95 Shield, LLC
Matt Miller
14325 N. 79 Street, Suite C
Scottsdale, AZ 85260
Office: 480-329-4374
Email: matt@n95-shield.com
www.n95-shield.com

[Doc. 30-01, ¶ 15] (emphasis added).

The Agreement contains two physical addresses for N95 Shield, namely, the Gilbert Address and the Scottsdale Address. The Gilbert Address – listed as N95 Shield's principal address – is found on the first page of the Agreement. The Scottsdale Address is found within Section 15 itself and is designated as N95 Shield's address for notice.[3] But Section 15 does not restrict service to only those addresses contained in Section 15, clearly indicating that all notices are considered properly served if mailed "to the addresses in the Agreement." Furthermore, Section 15 contemplates that the parties may designate different addresses for service as needed. Thus, based on the clear, unambiguous language of Section 15, the Court agrees with Redhawk that service was proper at either the Gilbert Address or the Scottsdale Address, as both of these addresses are "in the Agreement."

Here, Redhawk sent proper notice of the arbitration proceedings to N95 Shield via FedEx on March 18, 2022, and again on June 7, 2022. [Docs. 30-6, 30-8]. Both of those FedEx packages were delivered to N95 Shield prior to its dissolution on June

---

[3] Section 15 also allows the parties to designate a different address for notice as necessary.

10, 2022. Redhawk sent another 29 notices of the arbitration proceedings to N95 Shield, as follows:

| DATE | SUBJECT OF MATERIALS | TYPE OF SERVICE |
|---|---|---|
| December 21, 2021 | Litigation Hold | Email to Matt Miller at matt@n95-shield.com [Doc. 30-2] |
| January 6, 2022 | Default | Email to Matt Miller at matt@n95-shield.com [Doc. 30-3] |
| January 20, 2022 | Cure Defect | Email to Matt Miller at matt@n95-shield.com [Doc. 30-4] |
| March 18, 2022 | Duty to Arbitrate | Email to Matt Miller at matt@n95-shield.com [Doc. 30-5] |
| March 18, 2022 | Notice of Arbitration | FedEx to E. 1635 Orange Wood St., Gilbert, AZ 85296 [Doc. 30-6] |
| March 18, 2022 | Text Stating "litigation" was Underway | Text to Matt Miller (who responded to the text, asserting certain defenses, including Redhawk's breach of the Agreement) [Doc. 30-7] |
| June 7, 2022 | Demand for Arbitration | FedEx to E. 1635 Orange Wood St., Gilbert, AZ 85296 [Doc. 30-8] |
| July 8, 2022 | Amended Demand for Arbitration | FedEx to E. 1635 Orange Wood St., Gilbert, AZ 85296 [Doc. 30-9] |
| December 20, 2022 | Notice of Appearance in the Arbitration | FedEx to E. 1635 Orange Wood St., Gilbert, AZ 85296 [Doc. 30-10] |
| January 13, 2023 | Second Amended Demand for Arbitration | FedEx to E. 1635 Orange Wood St., Gilbert, AZ 85296 [Doc. 30-11] |
| January 13, 2023 | Second Amended Demand for Arbitration | FedEx to 14325 N. 79th St., Suite C, Scottsdale, AZ 85260 [Doc. 30-12] |
| January 26, 2023 | Arbitration Pre-Hearing Information Exchange | FedEx to E. 1635 Orange Wood St., Gilbert, AZ 85296 [Doc. 30-13] |
| February 3, 2023 | Six Separate Packages Containing Redhawk's Arbitration Proceeding Evidence and Testimony List | 1. Two packages (one sent via FedEx and one sent via USPS) were sent to Matt Miller at 14325 N. 79th St., Suite C, Scottsdale, AZ 85260.<br><br>2. Two packages (one sent via FedEx and one sent via USPS) |

| | | |
|---|---|---|
| | | were sent to Peter Reiss at 16124 Cinnabar Court, Waddell, AZ 85355; and<br><br>3. Two Packages (one sent via FedEx and one sent via USPS) were sent to Browning Holcombe at 20237 E. Sunset Court, Queen Creek, AZ 85142 [Doc. 30-14] |
| February 17, 2023 | Six Separate Packages Containing Redhawk's Supplemental Arbitration Proceeding Evidence and Testimony List | 1. Two packages (one sent via FedEx and one sent via USPS) were sent to Matt Miller at 14325 N. 79th St., Suite C, Scottsdale, AZ 85260.<br><br>2. Two packages (one sent via FedEx and one sent via USPS) were sent to Peter Reiss at 16124 Cinnabar Court, Waddell, AZ 85355; and<br><br>3. Two Packages (one sent via FedEx and one sent via USPS) were sent to Browning Holcombe at 20237 E. Sunset Court, Queen Creek, AZ 85142 [Doc. 30-15] |
| February 24, 2023 | Six Separate Packages Containing Redhawk's Post-Arbitration Hearing Brief | 1. Two packages (one sent via FedEx and one sent via USPS) were sent to Matt Miller at 14325 N. 79th St., Suite C, Scottsdale, AZ 85260.<br><br>2. Two packages (one sent via FedEx and one sent via USPS) were sent to Peter Reiss at 16124 Cinnabar Court, Waddell, AZ 85355; and<br><br>3. Two Packages (one sent via FedEx and one sent via USPS) were sent to Browning Holcombe at 20237 E. Sunset Court, Queen Creek, AZ 85142 [Doc. 30-16] |
| March 31, 2023 | Six Separate Packages Containing Redhawk's Lodestar Calculations for Attorneys' Fees | 1. Two packages (one sent via FedEx and one sent via USPS) were sent to Matt Miller at 14325 N. 79th St., Suite C, Scottsdale, AZ 85260.<br><br>2. Two packages (one sent via FedEx and one sent via USPS) |

| | | |
|---|---|---|
| | | were sent to Peter Reiss at 16124 Cinnabar Court, Waddell, AZ 85355; and 3. Two Packages (one sent via FedEx and one sent via USPS) were sent to Browning Holcombe at 20237 E. Sunset Court, Queen Creek, AZ 85142 [Doc. 30-17] |

In *Bernstein Seawell & Kove v. Bosarge*, defendant argued that an "arbitration award [was] unenforceable because he was not informed of the arbitration proceedings until after the hearing had been held, and the arbitrators had reached a final decision." 813 F.2d 726, 729 (5th Cir.1987). There, the district court determined that: (1) plaintiff had provided notice under the terms of the partnership agreement, and (2) defendant had actual notice of the proceedings, and the Fifth Circuit affirmed on appeal. *Id.* at 729-30. Discussing the *Bernstein* decision ruling in a later decision, *21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, the Fifth Circuit explained:

> ... all parties in an arbitration proceeding are entitled to notice and an opportunity to be heard. For vacatur of an arbitration award, however, the court require[s] the absence of actual or constructive notice. Regardless of whether Bernstein had complied with the partnership agreement, we enforced the award because the record contained 'sufficient evidence to support the conclusion that Bosarge received actual or constructive notice of the arbitration hearing.'

747 F.3d 331, 339 (5th Cir. 2014).

In addition to the properly served notices to the addresses contained in the Agreement, Redhawk argues that N95 Shield had actual notice of the arbitration proceedings via a text message sent from Darcy Klug to Matt Miller of N95 on March 18, 2022, informing Mr. Miller that "litigation" was underway. [Doc. 30-7]. N95 Shield argues that text messages are not proper notice under the Agreement and that

the text message in question did not specifically request or demand arbitration. While it is not clear that this text message alone is sufficient to constitute actual or constructive notice, the Court need not decide that issue.

Considering the foregoing, N95 Shield fails to support its argument that vacatur of the arbitrator's Final Award is appropriate under 9 U.S.C. § 10(a)(4). It is therefore this Court's finding that service of all arbitration documentation was properly made on N95 Shield at the addresses contained in the Agreement. N95 Shield had notice of the arbitration proceedings and was not denied due process.

## CONCLUSION

For the reasons stated herein, N95 Shield's MOTION TO VACATE ARBITRATION AWARD [Doc. 25] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 24th day of January 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE